UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| Tri-Cities Holdings LLC, Jane Doe Nos. 1-2, and John Doe Nos. 1-6, Plaintiffs, | ) ) ) ) | |
| v. | ) ) | NO. 2:13-CV-108 |
| City of Johnson City, Tennessee, Johnson City Board of Commissioners, and the Johnson City Board of Zoning Appeals, Defendants. | ) ) ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

This is an action brought by plaintiffs ("Tri-Cities Holdings") against the defendants (collectively "Johnson City") for alleged violations of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, ("Rehabilitation Act") and the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Currently pending before the Court is a motion by Tri-Cities Holdings for a preliminary injunction, [Doc. 2], Johnson City's response in opposition, [Doc. 27], and Tri-Cities Holdings' reply, [Doc. 28]. An evidentiary hearing on the motion for a preliminary injunction was held on May 24, 2013. The Court has now determined that the issues are not ripe for disposition and, for the reasons which follow, plaintiffs' complaint will be DISMISSED.

A threshold issue in this case is ripeness. "Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or not at all." *Kentucky Press Ass'n. v. Commonwealth of Kentucky*, 454 F.3d 505 (6th Cir. 2006) (quoting *Nat'l Rifle Assoc. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997)). Ripeness is a justiciability doctrine designed "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985). The doctrine of ripeness "is more than a mere procedural

question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Dealer Services, Inc. v. Dub Herring Ford*, 547 F.3d 558, 560 (6th Cir. 2008) (quoting *River City Capital, L.P. v. Board of County Comm'rs.*, 491 F.3d 301, 309 (6th Cir. 2007)).

Ripeness "draw[s] both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Id.* at 560-61 (quoting *Nat'l Park Hospitality Ass'n. v. Dept. of Interior*, 538 U.S. 803, 808 (2003)). "Enforcing ripeness requirements discourages 'premature adjudication' of legal questions and judicial entanglement in abstract controversies." *Id.* at 561 (citing *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (*en banc*)). The ripeness doctrine "focuses on the timing of the action," *United States Postal Service v. Nat'l Ass'n. of Letter Carriers*, 330 F.3d 747, 751 (6th Cir. 2003), and requires the court to exercise its discretion to determine whether the issues are appropriate for immediate judicial resolution. *See Brown v. Ferro Corp.*, 763 F.2d 798, 801 (6th Cir. 1985) ("The ripeness doctrine not only depends on the finding of a case and controversy and hence jurisdiction under Article III, but it also requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances.").

Thus, the doctrine serves as a bar to judicial review whenever a court determines a claim is filed prematurely. *Dealer Computer Services*, 547 F.3d at 561. Plaintiff has the burden to allege facts in its complaint sufficient to establish that the court has subject matter jurisdiction. *Cincinnati School District v. Board of Education*, 2005 WL 6781829 (6th Cir. Oct. 17, 2005) (citing Fed. R. Civ. P. 8(a)(1)); *Board of Trustees of Painesville Tp. v. City of Painesville*, 200 F.3d 396, 398 (6th Cir. 1999); *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). The factors to be considered when assessing the ripeness of a dispute are: (1) The likelihood that the harm alleged by the party will ever come to pass; (2) the hardship to the parties if judicial relief is denied at this stage in the

2

proceedings; and (3) whether the factual record is sufficiently developed to produce a fair adjudication of the merits. *Dealer Computer Services*, 547 F.3d at 561 (citing *Letter Carriers*, 330 F.3d at 751). The Sixth Circuit has held that a claim is ripe when it is "highly probable" that the alleged harm or injury will take place. *See Kardules v. City of Columbus*, 95 F.3d 1335, 1344 (6th Cir. 1996).

Tri-Cities Holdings is a Georgia limited liability company which intends to establish an outpatient methadone maintenance treatment service in Johnson City. The individual John Doe and Jane Doe plaintiffs are opiate addicted residents of the Johnson City area and prospective patients at the proposed methadone clinic to be operated by Tri-Cities Holdings. Plaintiffs seek declaratory and injunctive relief against Johnson City. More specifically, they ask the Court to declare Johnson City's zoning ordinance relating to methadone clinics facially invalid and in violation of the ADA and the Rehabilitation Act. They further seek a preliminary injunction requiring Johnson City to cease withholding of the necessary permits and permission for Tri-Cities Holdings to open and operate its methadone clinic "subject to [Tri-Cities Holdings] obtaining the Certificate of Need from the Tennessee Health Services and Development Agency and a license from the Tennessee Department of Health for such methadone treatment clinic." [Doc. 3 at 2].

The zoning ordinance at issue limits the location and operation of a methadone clinic to areas zoned MS-1 (medical service district) within the city of Johnson City and limits the location of methadone clinics to arterial streets not within 200 feet of any school, day-care facility, park, or establishment that sells either on-premise or off-premise alcoholic beverages. Clinics may be operated only between the hours of 7:00 a.m. and 8:00 p.m. and the facility must be fully licensed by the appropriate state regulating agency and obtain the necessary certificate of need from the appropriate state agency. Tri-Cities Holdings has obtained an option to lease property located at 4 Wesley Court inside the city limits of Johnson City which does not comply with the requirements of the Johnson City zoning

ordinance but which is "[t]he only available and suitable MS-1 zoned property" in Johnson City, [Doc. 1 at 64].

Tri-Cities Holdings has applied for a Certificate of Need ("CON") for a "Non-residential Methadone Treatment Facility" ("methadone clinic") from the Tennessee Health Services and Development Agency (the "state agency"). The state agency is expected to consider the CON application on June 26, 2013. After the CON is granted, Tri-Cities Holdings must apply for a license to operate its methadone clinic from the Tennessee Department of Health,[1] [Doc. 1 at ¶¶ 65-67]. Tri-Cities Holdings alleges that Johnson City's refusal to grant zoning approval of its methadone clinic "is interfering with [Tri-Cities Holdings'] application for a CON" and "potentially interferes" with Tri-Cities Holdings' application for a license." [*Id.* at ¶¶ 67-68].

Some understanding of the CON process in Tennessee is necessary to the resolution of the issue before the Court.[2] The "Tennessee Health Services and Planning Act of 2002," Tenn. Code Ann. § 68-11-1601 *et seq.*, requires a CON granted by the state agency before a person/entity may initiate certain health care services, or construct, develop or establish certain health care institutions, including opiate addiction treatment provided through a nonresidential substitution-based treatment center for opiate addiction. Tenn. Code Ann. §§ 68-11-1607(a)(1) and (4), 1602(2) and (7)(A). A CON may not be granted "unless the action proposed in the application is necessary to provide needed health care in the area to be served, can be economically accomplished and maintained, and will contribute to the orderly development of adequate and effective health care facilities or services." Tenn. Code Ann. § 68-11-

---

[1] The plaintiffs have incorrectly alleged in their complaint that the license must be granted by the Tennessee Department of Health. In fact, Tri-Cities Holdings must be licensed by the Tennessee Department of Mental Health and Substance Abuse Services.

[2] The Court may take judicial notice of the statutory framework governing the procedure for the CON process. *See Val Decker Packing Co. v. Corn Products Sales Co.*, 411 F.2d 850, 852 (6th Cir. 1969).

609(b). In making its determinations, the state agency uses "as guidelines the goals, objectives, criteria and standards in the state health plan." *Id.*

After an application for a CON is commenced, any health care institution opposed to the application must file written notice with the agency no later than fifteen days before the meeting at which the application is scheduled and any other person wishing to oppose the application must do so at or prior to the consideration of the application by the agency. Tenn. Code Ann. § 68-11-1607(c)(1)(A) and (B). As to any application for a methadone clinic, the statute explicitly grants local governing bodies the right to participate in the hearing and an opportunity to appear and express support or opposition to the granting of a CON. Support of local governing bodies is not a requirement for the granting of a CON by the state agency. Tenn. Code Ann. § 68-11-1624. After consideration of the application, it may be approved in whole or in part "upon any lawful conditions that the agency deems appropriate and enforceable on the grounds that those parts of the proposal appear to meet applicable criteria." Tenn. Code Ann. § 68-11-1609(a)(1).[3] Any conditions placed on the CON shall also be made conditions of any corresponding license. Tenn. Code Ann. § 68-11-1609(a)(1)(A).

Within fifteen days of the approval or denial of the CON application, "any applicant, health care institution that filed a written objection . . ., or any other person who objected to the application . . . may petition the agency in writing" for a contested case hearing to be conducted in accordance with the Tennessee Uniform Administrative Procedures Act. *See* Tenn. Code Ann. § 4-5-101 *et seq.* A person aggrieved by a final decision in a contested case may then file a petition for review in the Chancery Court of Davidson County, Tennessee. Tenn. Code Ann. § 4-5-322(a)(1) and (b)(1)(A).

Given the Court's concerns about whether or not this matter is ripe for adjudication, and because

---

[3] This would appear to allow the state agency to condition the grant of a CON on the applicant's compliance with local zoning ordinances.

ripeness "even in a case raising only prudential concerns, . . . may be considered on the court's own motion," *Nat'l Park Hosp. Ass'n.*, 538 U.S. at 808, the Court issued a show cause order requiring the plaintiff "to show cause as to why this motion is not premature inasmuch as the plaintiff, Tri-Cities Holdings, LLC, has no Certificate of Need from the Tennessee Health Services and Development Agency or license from the Tennessee Department of Health." [Doc. 10]. Tri-Cities Holdings responded that "because no CON may be granted by the state unless it can show that the clinic can be economically accomplished and maintained" and because the Tennessee Department of Mental Health licensing regulations require compliance with "local laws," the ripeness requirements are satisfied. [Doc. 14 at 1]. The plaintiffs rely on a decision of the United States District Court for the Western District of Pennsylvania, *RHJ Medical Center., Inc. v. City of Dubois*, 754 F.Supp.2d 723, 768 (W.D. Pa. 2010), for the proposition that a plaintiff's as-applied challenge to an allegedly discriminatory methadone clinic zoning ordinance was ripe merely because the enactment of the ordinance violated anti-discrimination laws, including the ADA and the Rehabilitation Act.[4] The plaintiffs also cite the Supreme Court decisions in *Regents of the University of California v. Bakke*, 438 U.S. 265 (1978) and *Heckler v. Mathews*, 465 U.S. 728 (1984) and argue that discrimination claims are ripe for adjudication even where plaintiffs might not achieve the sought after benefit even if the plaintiff prevails.

These cases, however, are easily distinguishable from the present one. In *RHJ Medical Center*, the operator of a methadone treatment facility challenged the facial validity of a Pennsylvania municipality's zoning ordinance, even though plaintiff had not yet applied for a permit or variance under the ordinance. Notwithstanding the lack of a "final decision," the district court found the matter ripe for

---

[4] Plaintiffs appear to argue, although not explicitly, that the ripeness standards are relaxed because they make a facial challenge to an allegedly discriminatory ordinance. They have no authority for such a broad proposition. It is true that ripeness standards are somewhat relaxed for facial First Amendment challenges; no First Amendment claim is made in this case. *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002); *Currence v. Cincinnati*, 28 Fed. App'x 438, 2002 WL 104778 (6th Cir. January 24, 2002).

6

adjudication because plaintiffs had stated "a plausible claim that the mere enactment of this ordinance violates substantive due process and equal protection." 754 F.Supp.2d at 766-67. Pennsylvania, however, as Tri-Cities Holdings acknowledges, is not a certificate of need state like Tennessee. In other words, RHJ Medical Center did not need the additional approval and licensing of the state of Pennsylvania to operate its clinic; it was only the zoning ordinance that stood in its way. Here, even if the Court declares the zoning ordinance invalid and enjoins its enforcement, Tri-Cities will not necessarily be able to open and operate its proposed facility.

In *Bakke*, a white male applicant to a state medical school, whose application had been rejected, challenged the University of California Davis's admissions program as violating the California Constitution, Title VI of the Civil Right Act of 1964, and the Equal Protection Clause of the Fourteenth Amendment based on its consideration of race in making admissions decisions. The majority opinion addressed briefly the question of standing, not ripeness, in a footnote to the opinion. *See* 438 U.S. at 281 n.14. Several *amici* had suggested that Bakke had not shown that his injury-exclusion from medical school-would be redressed by a favorable decision. In other words, it was suggested that the court lacked jurisdiction under Article III. *Id.* Justice Powell, writing for the majority, noted that the injury in fact requirement was met, for Article III purposes, by the university's decision not to permit Bakke to compete for all 100 places apart from his failure to be admitted to the medical school. *Id.* Tri-Cities Holdings' reliance on the language of *Bakke* misses the point. While there is "unquestionably some overlap between ripeness and standing," *Airline Prof. Ass'n v. Airborne, Inc.*, 332 F.3d 983, 988 (6th Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975)), "[a] threatened or imminent injury may satisfy standing's injury-in-fact requirement, yet the claim may still be unripe [*i.e.*, premature] if the issues are not fit for judicial review, perhaps because future events may greatly affect the outcome of the litigation and the cost of waiting is not particularly severe." *Id.*

7

Finally, in *Heckler v. Mathews*, a social security retiree brought a class action alleging that application of a pension offset provision of the Social Security Act which applied to him and other nondependent men but not to similarity situated women violated the Fifth Amendment. The Supreme Court initially addressed Mathews's standing in light of the undisputed fact that, even if successful, he would not obtain greater social security benefits. 465 U.S. at 737-40. The Supreme Court found the allegation of unequal treatment in the provision of social security benefits to be a "type of personal injury . . . long recognized as judicially cognizable." *Id*. at 738. "[D]iscrimination itself, by perpetuating archaic and stereotypic notions or by stigmatizing members of the disfavored group as innately inferior and therefore as less worthy participants in the political community" was found to be the kind of injury sufficient for purposes of the constitutional case and controversy requirement to confer standing. *Id*. at 739 (citation and internal quotation marks omitted). Once again, the issue was standing, not ripeness.

Plaintiffs' position here represents a fundamental misunderstanding of the ripeness doctrine. The question raised by the Court's show cause order was not one of standing, which the plaintiffs presumably have, but rather prematurity, because of the State of Tennessee requirements, as to CON and licensing, which have not been met and may never be met for reasons totally unrelated to Johnson City's zoning ordinance. Federal courts do not have subject matter jurisdiction to hear claims that are not ripe. *Norton v. Ashcroft*, 298 F.3d 547, 555 (6th Cir. 2002), and it is the plaintiffs, as noted above, who have the burden of alleging facts ***in their complaint***[5] which establish the court's subject matter jurisdiction. *Supra* at 2.

Turning now to the specific question of whether plaintiffs' claim here is ripe for decision, the Court concludes it is not, for several reasons. Although the factual record is sufficient to allow the Court

---

[5] Although plaintiffs submitted a lengthy affidavit and exhibits in response to the show cause order, the burden on the plaintiffs is to establish subject matter jurisdiction in their complaint and it is the complaint to which the Court looks.

8

to decide plaintiffs' facial challenges to the zoning ordinance, because it is largely a legal issue, it is virtually impossible at this time for the Court to determine any likelihood that the harm alleged by plaintiffs will ever come to pass, and there is minimal hardship on the parties if judicial review is denied as premature until it is determined whether Tri-Cities Holdings can meet the State of Tennessee's CON and licensing requirements.[6]

As set forth above, the CON may not be granted unless the state agency finds the facility to be "necessary," economically feasible, and contributory of the goals, objectives, criteria and standards of the state's health plan. None of these requirements explicitly implicate local zoning ordinances and the requirements clearly show that there are a host of reasons why the CON and subsequent licensing might not be granted, all unrelated to Johnson City's zoning ordinance. In other words, the state agency may grant Tri-Cities Holdings a CON or it might not. If it does, the Tennessee Department of Mental Health may grant a license or it might not. Whether a CON is granted or denied, the state agency's decision is subject to an appeal by either Tri-Cities Holdings (if a CON is denied) or by a health care institution opposed to the application (if a CON is granted). The decision by the state agency could either be upheld or overturned. *See, e.g. Cincinnati School District*, 2005 WL 6781829. *See also Lawrence v. Welch*, 531 F.3d 364, 373 (6th Cir. 2009) (Sutton J. concurring) ("In the absence of concrete facts regarding the [state agency's] affirmative or negative assessment of [Tri-Cities Holdings'] . . . application, any resolution of [Tri-Cities Holdings'] claim-indeed even the assumption that [Tri-Cities Holdings] will be injured-is necessarily premature."). Likewise, the plaintiffs' request for injunctive relief involves the Court's consideration of the question of whether the public interest would be served by injunctive relief,

---

[6] In the affidavit submitted in response to the Court's show cause order, plaintiffs alleged that the issuance of a license after acquisition of a CON is "routine." No appropriate state official has offered a similar opinion and the rules of the Tennessee Department of Mental Health applicable to non-residential opiate treatment program facilities suggest otherwise. *See* Rules of the Tennessee Department of Mental Health and Developmental Disabilities, Chapter 0940-05-42, Minimum Program Requirements for Non-Residential Opioid Treatment Program Facilities, *www.state.tn.us/sos/rules/0940/0940-05/0940-05-42.20121219pdf*, (last visited June 7, 2013).

9

a question that goes to the heart of the CON process with which the state agency is charged.

It also appears that no party will suffer any real harm if judicial review is denied at this time. Clearly that is the case as far as Johnson City is concerned. Additionally, harm alleged by plaintiffs is speculative at this time until it can be demonstrated that Johnson City's ordinance is somehow actually preventing Tri-Cities Holdings from opening its proposed treatment facility. At worst, dismissal of the complaint at this juncture simply maintains the status quo during the pendency of the CON and licensure proceedings. And, since the preliminary injunction hearing has already been held and an appropriate record made, the facial validity of the ordinance can be decided quickly by the Court once the claim becomes ripe for resolution.[7] Plaintiffs do not show that they will suffer hardship if they must wait until the state has acted on Tri-Cities Holdings' CON application. *See Lawrence*, 531 F.3d at 373. The Court has also considered the possibility that "the governmental activity by its continuing and brooding presence, casts what well may be a substantial adverse effect on the interests" of the plaintiffs. *See Community Mental Health Services of Belmont v. Mental Health and Recovery Board*, 150 Fed. App'x 389, 2005 WL 2233603, at *7 (6th Cir. Sept. 14, 2005) (citations and internal quotation marks omitted) (quoting *Hooker Chem. Co. v. United States EPA*, 642 F.2d 48, 53 (3d Cir. 1981)). The Court has concluded that it does not. Although Tri-Cities Holdings may believe that Johnson City's zoning ordinance will have some adverse impact on its CON application, it does not, however, adequately plead or otherwise show such to be the case. *See Id.*

In view of the above, it is clear to the Court that the case is not ripe and the Court lacks subject matter jurisdiction at this time. The case will, therefore, be DISMISSED WITHOUT PREJUDICE.

So ordered.

---

[7] The dismissal will be without prejudice and the Court will permit plaintiffs to reopen the case by motion upon a showing of ripeness rather than requiring the plaintiffs to file a new complaint.

10

ENTER:

                s/J. RONNIE GREER
               UNITED STATES DISTRICT JUDGE